# Robert Galbreath, James Bryson, James Sample, Ephraim Jones and Tarleton Bates *against* Judah Colt.

Agreement to argue a case before the judges of the Circuit Court and their opinion to be conclusive, if the agreement should come on before one judge of the Circuit Court by mutual consent, upon a change of the judiciary system, no appeal will lie to the Supreme Court, from the decision of such single judge.

APPEAL from the decision of the Circuit Court of Allegheny county.

An amicable action was entered between the parties, under the following agreement.

### Galbreath, *et. al. v.* Colt.

It is agreed, that an amicable action in case between the said · parties, be entered as of June term last. The defendant pleads *non assumpsit* and payment, with leave to give the special matters in evidence. The plaintiffs join issue on both pleas and rule for trial. It is further agreed, to remove the cause to the Circuit Court, as of September term last, to argue it before the present judges of said court, on a case to be stated to them, and such other evidence as either party produces, and their opinion to be conclusive, between the parties ; it being mutually understood, that the object of the present suit is to obtain a speedy decision on the points in controversy, without any regard to the form of action, all objections on either side are waived, not relating to the merits of the case.

*552]

Henry Baldwin, *pro quer.*
James Ross, *pro def.*

To the Prothonotary of Allegheny county, 31st October 1803.

In pursuançe whereof, the amicable action was entered and put at issue, and removed as of September term 1803, into the Circuit Court, and the following case was stated and signed by the parties, for the opinion of the court, viz.

At the Allegheny Court of Quarter Sessions, of September 1797, several bills of indictment for riots, were found against James Lowrey, and others. The defendant, as agent for the Pennsylvania Population Company, was the private prosecutor of these indictments ; and at the said sessions, by the advice and direction of the court, he entered into a stipulation to pay costs, in case of a verdict for the defendants.

These indictments were continued from term to term, until September term 1798, when the defendants pleaded not guilty to all the indictments, and were convicted upon one of them.

After this conviction, it was agreed between the defendants, and the attorney for the commonwealth, with the consent of Judah Colt, the private prosecutor, that a *nolle prosequi* should be entered against the defendants in two of the indictments, upon the payment of costs by the defendants. This entry was accordingly made upon the docket, and indorsed upon the indictments, together with an agreement by the attorney for the commonwealth with the consent of Judah Colt, that the recognizances of the defendants in the indictments should not be sued, till after the ensuing term.

The bill of costs, when taxed by the clerk of the sessions, was disputed by the Lowreys as being too high, and was thereupon referred by their consent and request, to the president of the Court of Quarter Sessions. Before the president delivered his opinion, the Lowreys refused to pay any costs, and no recognizance of theirs could be found upon which they could be sued.

[Galbreath et al. *v.* Colt.]

Process was issued by the attorney for the state to bring in the defendants, upon three of the indictments of September 1797, and they were accordingly brought in to answer at September 1799. This process was issued by the direction of the attorney for the state, without the knowledge or consent of *Judah Colt, other than his having requested that the bills for attendance of *witnesses on the part of the prosecutor might be collected;** and process was issued to compel Judah Colt to appear [*553 and give testimony on those indictments; *and the prosecution was revived as the most efficacious mode of recovering the fees, and prosecutor's bills due on the indictments.** On the trial of two of the indictments at September term 1800, the defendants were acquitted, and the costs taxed.

These costs are now demanded of Judah Colt, upon his stipulation of September term 1797, and he refuses to pay, conceiving himself discharged of his stipulation. The Court of Quarter Sessions have given no opinion on this question; and the plaintiffs have brought this suit, to try whether Colt is liable to pay the bills as taxed, or any part of them.

Henry Baldwin, attorney for plaintiffs.

Thomas Collins, attorney for defendant.

The case was attempted to be argued at the Circuit Court in October term 1804, but YEATES and SMITH, Justices, who then held the court, thought the case not stated sufficiently full, and recommended some additions to be made thereto. This was done after the court, and the words which are in italics, were inserted in the case.

Owing to the press of business, the argument did not take place at the Circuit Court, held for Allegheny county, in October 1805; and on the 24th February 1806, the act passed, "to "alter the judiciary system of this commonwealth;" by the 9th section whereof it was provided, that no Circuit Court of the Supreme Court should be held otherwise than by a single judge. 7 St. Laws 337.

The case was afterwards, by mutual consent, argued before TILGHMAN, C. J., at a Circuit Court for Allegheny county, on the 15th September 1806; and after due consideration had thereof, he gave the following decision thereon.

Chief Justice. It is not material to enquire whether Judah Colt could have been compelled to enter into a stipulation to pay the costs of the indictments, in case the defendants should be acquitted. He did enter into that stipulation, which being his voluntary act, must now be considered as binding. The defendants in the indictments, having been acquitted, Colt is liable on his stipulation, unless he has been discharged by the officers of the commonwealth. He contends, that he was discharged by the agreement to enter a *nolle prosequi.* But it appears to me,

* The lines in italics, are interlined in the original case.

*that this agreement was not absolute, but subject to the con·dition of payment of costs by the persons indicted. This con·dition not having .been complied with, the *nolle prosequi* was not entered, and all parties stood precisely on the footing they were on, before the agreement was made. It was the business of Colt to attend to the conducting of the prosecution. There is no reason why the county of Allegheny should be liable to the payment of costs, against which they had been guarded by Colt's stipulation, the benefit of which they never relinquished. I am therefore of opinion, that the defendant is liable to the costs of the indictments, on which Lowrey and others were acquitted.

Judgment having been entered thereon on the 7th November 1807, for the plaintiffs, an appeal was filed to. this term, and six different reasons of appeal were also filed; but as the court did not determine on the merits of the suit, it is unnecessary to re peat them.

Mr. Baldwin for the plaintiffs, now prayed that the appeal should be dismissed. The decision of the Circuit Court was agreed by the parties to be conclusive between them. The case has been fully argued, and the court have given final judgment thereon; and the controversy between the parties is at rest.

Mr. Ross for the defendants contended, that it never had been in the contemplation of the parties, to refer their dispute to the opinion of a single judge without the benefit of appeal.

The change in the judiciary system had virtually rescinded the agreement in this particular. Under the agreement, the case was to be argued before the present judges of the Circuit Court, and their opinion to be conclusive. But it was not so argued, and therefore the decision is not within the contract of the parties.

It is well known, that in October 1803, and before and afterwards, two judges usually held the Circuit Courts, and no one could foresee the alteration that has since taken place: and though it may be said, that two judges in Bank might reverse the decision of two judges sitting in the Circuit Court, it will be readily admitted, that a greater difficulty would exist in such a case, than where a single judge had given his determination.

At all events, the true meaning and spirit of this agreement has not been carried into execution; and to preclude the defendants from the benefit of an appeal, would do them a manifest wrong.

YEATES, J.   The agreement of 31st October 1803, is perfectly clear and intelligible in its terms, provided it be considered as *a subsisting valid agreement, and referable to the cause *555] before us. It is stipulated thereby, that the opinion of the court on the case to be stated should be conclusive betwee : the parties,

[Galbreath et al. *v.* Colt.]

An appeal generally lies, by the words of our Circuit Court law, from the decision of the judge in the Circuit Court on a case stated ; but the parties may, by their convention, relinquish their right to an appeal ; and cases are not wanting in our books to shew, that a superior court will enforce the consent of an attorney not to bring a writ of error.   If from want of time, or other imperious circumstances, a cause cannot be tried or argued according to the contemplation of the parties, when they entered an amicable action, the agreement to enter it must be considered as binding in all the subsequent stages of the suit.

It has been objected, that this agreement had in view an argument before the judges of the Circuit Court according to its then conformation ; that two members usually held it ; and that a change in the judiciary system having been introduced prior to the argument, it cannot reasonably be supposed, that the parties ever intended to be bound by the decision of a single judge without the benefit of an appeal.   To this it was answered, that a case was agreed upon to be argued before the two judges, who rode in the fall of 1804, but some necessary essential facts according to their sentiments, not being stated therein, it was agreed they should be added, and the statement was corrected accordingly.   It is clear, that the amicable action was entered, the declaration filed, the cause put to issue and removed, the case stated, and again corrected in pursuance of the original agreement.

If the counsel on either side thought that an alteration of the manner in which the judges rode, rendered a modification of the agreement necessary, they should have so modified it ; or if consent hereto was refused, an application should have been made to the court before the argument, shewing that the true spirit of the agreement would be violated by agreeing to its terms in all its parts, by a legislative regulation, over which the dissatisfied party had no controul.   No one can doubt, but that full justice would have been done upon such an application.   But neither of these measures have been pursued, and the parties have severally taken the chance of a decision of the question submitted in their favour.   Are we now competent to vary the stipulations of the parties ?   Must we not be controuled by their written declarations ?   By their agreement, the cause has been removed and argued in the Circuit Court ; and each party must rest in the bed which he has carved out for himself.

At the same time I must be permitted to add, that this court would gladly have entertained the appeal, if they conceived it *to be within their power.   Each member of the court feels a satisfaction in knowing that his decisions may be [*556 reviewed by the court in bank ; but believing as I do, that we cannot proceed on this appeal without the consent of the plaintiffs to rescind a part of the agreement under which this action was brought upon our records, I am of opinion that the appeal should be dismissed,

I have cautiously avoided saying anything on the merits of the case as filed, because I do not conceive that I am at liberty to give any opinion upon it.

SMITH, J.    I have seen the opinion which has been delivered, and I am impelled to concur therein, from the expressions used in the agreement, which declares that the opinion of the Circuit Court shall be conclusive between the parties.    We cannot break in on that agreement, which was the foundation of the whole proceeding.    My private inclination would be, to sustain the appeal, if it was possibly in our power, which does not seem to me to be the case.    Though the argument did not come on at the court following the agreement, it was still binding, and such has been the constant practice.    The cause was removed and argued under it ; and as the defendant might have availed him-self of it, if the decision had been in his favour, so also may the plaintiffs under the event, which has taken place.    But I think the case is peculiarly hard on the defendant.

BRACKENRIDGE, J.    I understood the first question in this case to be, whether an appeal is sustainable by this court, from the opinion of the Circuit Court, which was given on a case stated, under an agreement, of which I have not been furnished with a copy, along with that of the statement of the case ; but which I understand to have been to submit to the opinion of the two judges, then holding the Circuit Court, and that opinion to be conclusive ; provided the argument could be heard by those two judges, from the interference of other business at the time.    In strict-ness then, I would take it, there not having been time for hear-ing by those two judges, from the interference of other business at the time, there was an end to the agreement, and without an accommodation of the agreement to a hearing in another man-ner, it was *coram non judice*, and the hearing void.    Much more so, when a change in the constitution of the court gave the ad-vantage of one judge only at a Circuit Court, instead of two ; and more especially, when a reason which might have weighed, and it is presumable did weigh in the agreement on the part of either of the parties, was, that the court being constituted but of four judges, in the case of a reference to two, there could not be a majority out of four, to reverse the opinion of two ; a rea-son which is well known did operate much at the *Nisi Prius* courts, to prevent appeals or motions in bank from that which we had discovered to be the sense of the one half of the court, who had already heard the matter, considering such a motion or appeal to be unavailing : so that an agreement to acquiesce in the opinion of two as conclusive, even under the constitution of the Circuit Court, was not giving up much.    For though the other two judges in bank might reverse the opinion of the two circuit judges, yet the presumption was strong against it, the number being equal in both cases, and the presumption of understanding the same.    There is therefore a great differ-

[Galbreath et al. *v.* Colt.]

ence in the agreement to submit to two, under the former con-
stitution of the Circuit Court, and a submission to one under
the change which has taken place.

But it may be said, the arguing the case stated before the
single judge, by implication, carries with it the agreement that
the single judge's opinion shall have the effect which the agree-
ment contemplated; which was, that of a decision by two; and
if such was not the understanding of the party defendant, it be-
hoved him to have had the agreement accommodated to his
ideas, by an alteration as to that part of it, which respects the
conclusiveness of the effect.   On the contrary, I would take it,
that it behoved the party plaintiff, to have had an alteration
made as to the submission to one judge, if he meant to avail
himself of the conclusiveness of the opinion of one.

It may be said, there is an *astutia* here, to defeat the plaint-
iffs in the advantage they have gained by the opinion of the
single judge, and to relieve the defendant from the decision of
which he complains.   It may be so : but may it not be justifia-
ble, if it would seem to me, as I must acknowledge it does, that
the single judge has erred in his judgment in this case ?   And
even on this preliminary question, it seems to me, that it is
proper to over-reach it in the contemplation of the mind, and to
inquire what has been the decision of that judge.   It is allowa-
ble then, at least I have done it, to look at the case stated, even
in determining the first point.   For *astutia* in an endeavour to
get at justice, is allowable; and to admit a liberal or rigorous
construction of an agreement, with a view to that object.   I
have been disposed to do so, in favour of the defendant : for it
would seem to me, that the defendant ought to be considered
as relieved from the stipulation, as to the costs of the prosecu-
tion in question.   My memory does not serve me with a posi-
tive recollection; but it seems to me, that in the course of my
reading I have seen something, which has led me to doubt the
power of the court to impose the stipulation; and on principle,
there would seem reason to doubt it.   For though in fact, in a
*forcible entry there is a private as well as a public wrong,   [*558
and often times the injured party resorts to the indict-
ment, merely with a view to his private wrong, yet I should be
at a loss to conceive, that the power of the court could oblige
him to stipulate for costs in this more than in any other crimi-
nal case, when the statutes have not done it.   If so, the stipula-
tion would be void, and on that ground the defendant would be
relieved.   But supposing the stipulation legal and binding, it
respected an acquittal on trial.   But here by the agreement on
the part of the commonwealth with the defendants, the prosecu-
tion is arrested short of a trial ; a *nolle prosequi* is entered on
payment of costs.   It is true, the prosecutor assents to it.   But
nevertheless, it is the agreement of the attorney for the state
with the defendants ; and I would take it that the agreement
takes the case as to costs out of the stipulation, and puts it

[Welch, in Error, *v.* Vanbebber.]

wholly on the recognizance. The prosecutor, the stipulant, directed the proceeding for costs. But what could he be supposed to mean, but that the proceeding should be on the recognizance of the defendants, and for the purpose of costs only, and not for the purpose of trial? But no recognizance had been taken, as stated in the case. This was the oversight of the officer for the commonwealth, and for which the prosecutor, the stipulant, is not answerable. If the officer is reduced to the necessity of recurring to a process, to bring in the bodies of the defendants, and going on to trial, from the default of a recognizance, it would not seem to me reasonable, that he should hold the prosecutor to his stipulation, who in consequence of the agreement of the attorney of the state with the defendants, had given up the prosecution.

Is it under these impressions that I may be disposed to give the stipulant the advantage of any want of conformity to the agreement, on the strictest construction of it, in order to let in a consideration of this point. Justice is the great object of us all ; and when that does not certainly appear to have been obtained, the mind is not satisfied ; more especially, if all advantage has not been had in the hearing by such tribunal, in the first or last resort, as it may have been in the contemplation of the party to have had, who thinks himself aggrieved by the determination.

It is possible, that on hearing the matter argued, I might think with the judge who has given an opinion ; and in order to get at this, if the party to the agreement on the one side, will hold the other to the conclusiveness of the effect of the opinion, I would hold him to the strictness of the agreement as to the tribunal before whom it was agreed to be heard ; and unless he would consent to waive the conclusiveness, and give the advantage of a *hearing on appeal, I would turn him round to *559] begin again on the case stated, or leave him to his action, as it was commenced, and the ordinary progress of the suit.

Appeal dismissed.